IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | 1:14-cr-00455-PGG |
| KHIMANI, ET AL.,<br>*Defendants.* | §<br>§<br>§ | |

## DEFENDANT RIYAZ MAZCURI'S
## MOTION FOR ATTORNEYS' FEES AND EXPENSES

### INTRODUCTION

Without any advance warning or notice, on July 24, 2014, federal agents barged in on Dr.

Riyaz Mazcuri ("Dr. Mazcuri") at the hospital where he worked. They then shackled and threw

him into jail. Dr. Mazcuri, a respected father and licensed psychiatrist with no prior criminal

history, did not learn the reason for his detention until the next day when he was given a copy of

his Indictment. On its face, this Indictment was unconstitutionally vague and failed to satisfy

Federal Rule of Criminal Procedure 7. Specifically, the Government indicted Dr. Mazcuri on (1)

facts not presented to the Grand Jury; (2) omitted essential facts that went to the core of

criminality of the crimes charged; and (3) then neglected any acts or statements connecting Dr.

Mazcuri to the alleged conspiracy.

Based on this faulty Indictment, the press not only reported false allegations, but the

Texas State Medical Board launched an investigation into Dr. Mazcuri, effectively suspending

his ability to earn income. Over the course of the next few months, Dr. Mazcuri was forced to

hire an attorney and pay the expenses related to a prosecution spanning Texas, New York,

Georgia, and India. Through his attorney, Dr. Mazcuri also hired a private investigator and

attorney in India to locate and interview many of the performers referenced in the Indictment.

Then, before the Court could rule on the Indictment's defects and omissions, on March

30, 2015, the Government issued a *nolle prosequi*, declaring:

> We have recently learned additional facts that call into question certain information that had been relied upon at the time of the Indictment and that undermine the credibility of witnesses the Government had expected to call at trial. Based on a review of the evidence in the case and information acquired subsequent to the filing of the Indictment, the Government has concluded that further prosecution of . . . the defendants, would not be in the interests of justice.

While this statement concedes the clearly devastating weaknesses in the Government's case, it

does not acknowledge the vexatious, frivolous, and bad faith prosecution of Dr. Mazcuri from

the outset. It also fails to recognize the destructive power these mere accusations had on Dr.

Mazcuri's credibility and livelihood.[1] As Representative Henry Hyde articulated when

advocating for a law to address such situations, "I really wish you had some imagination and

could imagine yourself getting arrested, getting indicted, and [then] the Government has a case it

cannot substantially justify." 143 Cong. Rec. H7786-04, H7793 (1997). It is devastating.

## LEGAL FRAMEWORK

Representative Hyde's Amendment[2] states in relevant part:

> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act, may award to a prevailing party,[3] other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in

---

[1] When you Google Riaz Mazcuri, for example, his prison booking photo appears at the top of the results page. *See* https://www.google.com/webhp?sourceid=chrome-instant&rlz=1C1GGGE___US603US622&ion=1&espv=2&ie=UTF-8#q=riaz%20mazcuri (last visited April 10, 2015).

[2] The Hyde Amendment was enacted as a criminal counterpart to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, which authorizes courts to award attorney's fees and costs in most civil cases.

[3] The term "prevailing party" is not defined in either the Hyde Amendment or the EAJA. In other statutory fee-shifting contexts, however, the Supreme Court has interpreted the term broadly. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, n.7 (1983) (defining "prevailing party," for purposes of all federal statutes authorizing fee awards to plaintiffs, as those who "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit"). The Fifth Circuit held this broad formulation of the "prevailing party" standard is appropriate for EAJA applications. *See Milton v. Shalala*, 17 F.3d 812, 813 (5th Cir. 1994).

bad faith, unless the court finds that special circumstances make such an award unjust.

Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A (underscoring supplied).

The Second Circuit has not defined the terms "vexatious, frivolous or in bad faith" in the context of the Hyde Amendment; however, courts addressing Hyde Amendment claims have interpreted the terms "vexatious," "frivolous," and "in bad faith" in accordance with their common meanings. *See U.S. v. Reyes*, 16 F. Supp. 2d 759, 761 (S.D. Tex. 1998) (quoting BLACK'S LAW DICTIONARY (6th ed.)). And, both the Fourth and Eleventh Circuits have held:

> By its plain language, vexatious means without reasonable or probable cause or excuse. A frivolous action is groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant. And, bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.

*In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (internal cites and quotation marks omitted) (citing *United States v. Gilbert*, 198 F.3d 1293, 1298 (11th Cir. 1999)); *see also United States v. Gladstone*, 141 F. Supp. 2d 438, 445–46 (S.D.N.Y. 2001) (quoting *In re 1997 Grand Jury*, 215 F.3d at 436).

Courts are traditionally hesitant to award attorneys' fees to prevailing defendants, as an unjustified award could "chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry . . . ." *Wayte v. U.S.*, 470 U.S. 598, 607 (1985). However, the Hyde Amendment is not merely decorative; its genuine aim is to quell prosecutorial misconduct. And, this is just such a case.

### FACTUAL APPLICATION

3

The Government's bad faith prosecution of Dr. Mazcuri was evident from the start. First, rather than contact Dr. Mazcuri and offer the man—with no criminal record and with long-term ties to the community[4]—the opportunity to either turn himself in or respond to the charges, federal agents came to his work, Longview Behavioral Hospital, and walked him out of the building in handcuffs.

Second, the Indictment against Dr. Mazcuri was faulty because it included a dearth of information about the individuals' alleged involvement, while missing material information in each count, including:[5]

Count 1 (Forced Labor Conspiracy)

1.    The names of the "others known and unknown" who may or may not be alleged unindicted co-conspirators. (Indictment ¶¶ 1, 2[6], 3, 4, 5).

2.    The names of the "female dancers" allegedly hired from India. (Indictment ¶ 1).

3.    The names of the "certain performers" allegedly pressured to engage in prostitution. (Indictment ¶ 2).

4.    The names of the "dancers" whose passports were allegedly confiscated. (Indictment ¶ 2).

5.    The names of the "performers" on whose behalf alleged false statements were made in visa applications. (Indictment ¶ 2).

---

[4] Dr. Mazcuri became a naturalized U.S. citizen in the late 1980's. In 1996, Dr. Mazcuri started working as an attending psychiatrist and then medical director at Harris County's Mental Health and Mental Retardation Authority (MHMRA), a principally outpatient program. From 1996 to 2012, he treated acutely-ill patients at several psychiatric facilities in Houston.[4] From 2012 until his arrest in 2014, Dr. Mazcuri worked at East Texas Medical Center Behavioral Hospital in Tyler and as medical director at the Behavioral Hospital of Longview, Texas. Dr. Mazcuri and his late wife also had three children, which Dr. Mazcuri raised as a single father.

[5] Dr. Mazcuri articulated these deficiencies in more detail in a "Motion to Dismiss the Indictment, or, in the alternative, Motion for Bill of Particulars," filed on September 30, 2015. The Court never had an opportunity to rule on Dr. Mazcuri's Motion as a result of the Government's *nolle prosequi*.

[6] The Indictment has two paragraphs numbered "2." Any reference in this Motion to paragraph 2 is a reference to either the first paragraph 2 (which appears to have been numbered in out of typographical error) or the second paragraph 2 that follows the first.

6.      The specific locations(s) or information sufficient to identify the location(s) of the "houses and hotel rooms" where the dancers were allegedly held. (Indictment ¶ 2).

7.      The alleged "false statements" made in visa applications. (Indictment ¶ 2).

8.      The names of the "persons" who allegedly provided labor and services. (Indictment ¶ 3).

9.      Information sufficient to describe or identify what "scheme, plan, and pattern" defendants allegedly used. (Indictment ¶ 3).

10.      The "things of value" allegedly received by defendants. (Indictment ¶ 4).

11.      The specific location(s) of "elsewhere" as referenced in the phrase "in the Southern District of New York and elsewhere." (Indictment ¶¶ 1, 2, 6).

Count 2 (Visa Fraud Conspiracy)

12.      The names of the "others known and unknown" who may or may not be alleged unindicted co-conspirators. (Indictment ¶¶ 7, 8).

13.      The specific location(s) of "elsewhere" as referenced in the phrase "in the Southern District of New York and elsewhere." (Indictment ¶¶ 7, 9).

14.      The alleged "false statement" of a material fact. (Indictment ¶ 8).

Count 4 (Foreign Labor Contracting Fraud Conspiracy)

15.      The names of the "others known and unknown." (Indictment ¶¶ 11, 12).

16.      The names of the "persons" defendants allegedly recruited, solicited, and hired outside the United States. (Indictment ¶ 12).

17.      The names of the "other persons" defendants allegedly caused to recruit, solicit, and hire outside the United States. (Indictment ¶ 12).

18.      The specific location(s) of "elsewhere" as referenced in the phrase "in the Southern District of New York and elsewhere." (Indictment ¶¶ 11, 13).

19.      The alleged "pretenses, representations, and promises" made. (Indictment ¶ 12).

In short, the Indictment merely repeated the language of the statute, while omitting all supporting factual allegations. And without any of the above-described information, it was

5

impossible for Dr. Mazcuri to understand the charge, let alone prepare his defense against this prosecution. Thus, while the Government only recently declared in its *nolle* that "prosecution of . . . the defendants, would not be in the interests of justice," it seems difficult to conceive how the Government could ever justify—even from the outset—any reasonable, probable cause, or excuse for its Indictment.

Moreover, the details that the Indictment were unnecessarily inflammatory and used to provoke, rather than accuse. Dr. Mazcuri was charged with three counts: Count 1 (Forced Labor Conspiracy); Count 2 (Visa Fraud Conspiracy); and Count 4 (Foreign Labor Contracting Fraud Conspiracy). To support these claims, the Indictment used a same single overt act: "On or about August 1, 2008, RASHMIKANT PATEL, the defendant, caused a letter to be issued by a labor union located in New York, New York." Indictment, Count 1, ¶ 6.a, Count 2, ¶ 9.a, and Count 4, ¶ 13.a. This overt act is entirely unconnected to the Indictment's Background section, which details allegations of "human trafficking," "female dancers," and "prostitution." Specifically, the Indictment states that the defendants, including Dr. Mazcuri, "planned and committed human trafficking offenses, principally by hiring female dancers in India under false pretenses . . . and then, once they arrived in the United States, forcing them to dance in nightclubs in front of crowds of men for twelve to fourteen hours per night . . . pressuring certain performers to engage in prostitution."[7] These provocative details allude more closely to a prosecution brought under 18 U.S.C. §§ 2421[8] and 2422(a)[9] than the actual counts. Yet, the Government failed to bring any

---

[7] The Indictment fails entirely to mention that—according to the Government's own evidence—male performers and musicians also were a part of these groups. The allegations intentionally focus on the "female dancers."

[8] 18 U.S.C. §§ 2421 states: "Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both."

charges under these acts, much less allege an overt act for any of the actually asserted claims that related in any way to these details.[10]

The goal of these allegations was simply to "embarrass or annoy" Dr. Mazcuri, rather than establish the essential elements of the crimes alleged. *See United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). And, as such a purpose renders the indictment "frivolous," it justifies an award under the Hyde Amendment.

### *Even After Initial Discovery, Dr. Mazcuri Continues to Lack any Information with Which to Investigate or Defend Himself against these Allegations.*

Shortly after issuing the Indictment, in August 2014, the Government provided the Defendants, including Dr. Mazcuri, with its evidence. The initial batch included Department of Homeland Security records, photos, and phone records and comprised approximately 5800 pages. As there was so little documentation in support of the Government's case, Dr. Mazcuri's counsel immediately reviewed all of the evidence against Dr. Mazcuri. Yet, like the Indictment, the evidence was completely devoid of any mention of the name, location, address, phone number, or employees of the alleged club(s). Dr. Mazcuri continued to lack any information with which to investigate or defend himself against these allegations.

As a result, counsel made specific requests to the Government for additional evidence. In response, the Government provided almost nothing. *See* E-mail from A. Gargour to P. Skinner, Aug. 18, 2014 ("Also, is there more discovery forthcoming?"); E-mail from P. Skinner to A. Gargour, Aug. 18, 2014 ("You have all the discovery, though we will likely be supplementing

---

[9]  18 U.S.C. § 2422 states: "Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

[10] The Indictment also unnecessarily refers to Dr. Mazcuri as "The Doctor," evoking images of Josef Mengele, the infamous Nazi physician, rather than Dr. Mazcuri's actual persona as a respected medical director and father.

our production as we receive additional material in response to outstanding subpoenas."); E-mail from A. Gargour to P. Skinner, Sept. 16, 2014 ("I have just a few follow up questions to the [August 18, 2014] email below. 1. What subpoenas are still outstanding (which entities and/or persons)? 2. Has the government received any additional discovery through the outstanding subpoenas? 3. Will the government be producing any witness statements and/or 302s?"); E-mail from P. Skinner to A. Gargour, Sept. 16, 2014 ("We have nothing else to produce at this time."); E-mail from E. Smith to P. Skinner, Sept. 24, 2014 (requesting the same information later demanded in Dr. Mazcuri's Motion to Dismiss the Indictment, or in the alternative, Motion for a Bill of Particulars);[11] E-mail from P. Skinner to E. Smith, Sept. 29, 2014 ("We will provide you

---

[11]

Count 1 (Forced Labor Conspiracy)

|   |   |
|---|---|
| 1. | The names of the "others known and unknown" who may or may not be alleged unindicted co-conspirators. (Indictment ¶¶ 1, 2[1], 3, 4, 5). |
| 2. | The names of the "female dancers" allegedly hired from India. (Indictment ¶ 1). |
| 3. | The names of the "certain performers" allegedly pressured to engage in prostitution. (Indictment ¶ 2). |
| 4. | The names of the "dancers" whose passports were allegedly confiscated. (Indictment ¶ 2). |
| 5. | The names of the "performers" on whose behalf alleged false statements were made in visa applications. (Indictment ¶ 2). |
| 6. | The specific locations(s) or information sufficient to identify the location(s) of the "houses and hotel rooms" where the dancers were allegedly held. (Indictment ¶ 2). |
| 7. | The alleged "false statements" made in visa applications. (Indictment ¶ 2). |
| 8. | The names of the "persons" who allegedly provided labor and services. (Indictment ¶ 3). |
| 9. | Information sufficient to describe or identify what "scheme, plan, and pattern" defendants allegedly used. (Indictment ¶ 3). |
| 10. | The "things of value" allegedly received by defendants. (Indictment ¶ 4). |
| 11. | The specific location(s) of "elsewhere" as referenced in the phrase "in the Southern District of New York and elsewhere." (Indictment ¶¶ 1, 2, 6). |

Count 2 (Visa Fraud Conspiracy)

|   |   |
|---|---|
| 12. | The names of the "others known and unknown" who may or may not be alleged unindicted co-conspirators. (Indictment ¶¶ 7, 8). |
| 13. | The specific location(s) of "elsewhere" as referenced in the phrase "in the Southern District of New York and elsewhere." (Indictment ¶¶ 7, 9). |
| 14. | The alleged "false statement" of a material fact. (Indictment ¶ 8). |

Count 4 (Foreign Labor Contracting Fraud Conspiracy)

|   |   |
|---|---|
| 15. | The names of the "others known and unknown." (Indictment ¶¶ 11, 12). |
| 16. | The names of the "persons" defendants allegedly recruited, solicited, and hired outside the United States. (Indictment ¶ 12). |
| 17. | The names of the "other persons" defendants allegedly caused to recruit, solicit, and hire outside the United States. (Indictment ¶ 12). |

and the attorneys for the other defendants the locations we have identified to date where victims were confined against their will. I expect to have this information for you shortly . . . We believe the remaining information that you have requested you either already have via our earlier disclosures or is beyond our disclosure obligations.").

One of the biggest obstacles to Dr. Mazcuri's investigation was the witnesses' location; most, if not all, live in India and were therefore far outside Dr. Mazucri's subpoena power.[12] Thus, only the Government had access to these witnesses and their testimony. On this basis, Dr. Mazcuri filed a Motion for Letters Rogatory[13] to conduct its own depositions of these witnesses and thereby capture otherwise unavailable exculpatory evidence. Again, the Government resisted. Yet, before the Court could rule on Dr. Mazcuri's Motion,[14] the Government turned over their 302 interviews. It was clear from their face that the prosecution could not move forward. And, shortly thereafter, the Government dismissed all charges.

The dearth of evidence, as well as the Government's resistance to provide either inculpatory or exculpatory evidence to Dr. Mazcuri, suggests a vexatious, frivolous action— rather than a simple mistake, particularly when coupled with the Government's ensuing *nolle*. Clearly, the Governments evidence *never* supported its Indictment and prosecution of these defendants was *never* in the interests of justice.

---

18.     The specific location(s) of "elsewhere" as referenced in the phrase "in the Southern District of New York and elsewhere." (Indictment ¶¶ 11, 13).

19.     The alleged "pretenses, representations, and promises" made. (Indictment ¶ 12).

[12] The Government initially refusal to produce the addresses of any of the alleged dancers and musicians at these clubs. Dr. Mazcuri pressed the Government for this information for several months. Finally, on January 30, 2015, the Government relented.

[13] The Indictment suffered from dozens of defects, and this is only one of several Motions filed by Dr. Mazcuri. For example, Dr. Mazcuri also challenged venue, Count 4 as an *ex post facto* law, and unnecessary surplusage.   ECF Nos. 58 & 102.

[14] Counsel for Dr. Mazcuri filed the lion's share of the substantive motions in this case. The other Defendants largely filed "me too" motions. Perhaps the Government was not anticipating such fervent resistance to its Indictment and hoped to simply secure plea deals on the basis of its salacious allegations.

## Eligibility

Dr. Mazcuri qualifies under 28 U.S.C. § 2412(d)(2)(B) as his net worth did not exceed $2,000,000 at the time of the indictment and does not today.

## Attorneys' Fees and Expenses

Dr. Mazcuri's claim for attorneys' fees and expenses is set forth in the Declaration of Joel Androphy, filed separately, and time records of the firm, attached as Ex. 1.

## Conclusion

For the reasons set forth above, Dr. Mazcuri respectfully requests that the Court grant his Motion for Attorneys' Fees and Expenses.

Dated:  April 27, 2015

Respectfully submitted,

**BERG & ANDROPHY**

By: /s/ Joel M. Androphy
Joel M. Androphy
New York Bar No. 4578142
Emily M. Smith
Texas Bar No. 24083876 (Admitted *Pro Hac Vice*)
3704 Travis Street
Houston, Texas 77002
Tel: 713.529.5622
Fax: 713.529.3785

**ATTORNEYS FOR DEFENDANT
RIYAZ MAZCURI**

## CERTIFICATE OF CONFERENCE

I certify that I attempted to confer with the AUSA regarding the Motion for Attorney's

Fees and Costs. The Government did not return my call.

/s/ Joel M. Androphy
Joel M. Androphy

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on the following

parties via the CM/ECF system this 27nd day of April 2015.

U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2601

/s/ Joel M. Androphy
Joel M. Androphy

MEMO ENDORSED:

Defendant Riyaz Mazcuri's application for an award of attorneys' fees and costs under the Hyde Amendment is denied.  "The Hyde Amendment provides that a district court 'may award to a prevailing [criminal defendant] . . . a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith. . . .'"  United States v. Bove, 888 F.3d 606, 607 (2d Cir. 2018) (quoting Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes)).  "For the government's position to be 'vexatious, frivolous, or in bad faith,' the prosecution must have been brought (a) to hector or intimidate the defendant on shaky factual or legal grounds (vexatious); (b) without even a reasonably arguable factual and legal basis (frivolous); or (c) with an element of intentional deceit or dishonesty (in bad faith)."  Id. at 609.

These standards place an "intentionally demanding" burden on criminal defendants.  Bove, 888 F.3d at 609 n.12; see also United States v. Barone, No. 09 CR. 91 NRB, 2011 WL 4056903, at *2 (S.D.N.Y. Aug. 29, 2011), 2011 WL 4056903, at *2 (S.D.N.Y. Aug. 29, 2011) (noting that the "Hyde Amendment's 'plain language . . . places a daunting obstacle before defendants'") (quoting United States v. Gilbert, 198 F.3d 1293, 1302 (11th Cir. 1999)).  "An acquittal, without more, will not lead to a successful Hyde Amendment claim, as it was Congress's intent to limit Hyde Amendment awards to cases of affirmative prosecutorial misconduct rather than simply any prosecution which failed."  United States v. Schneider, 395 F.3d 78, 88 (2d Cir. 2005) (internal quotation marks omitted).  The "Hyde Amendment must be strictly construed in that it involves a waiver of sovereign immunity."  United States v. Schneider, 289 F. Supp. 2d 328, 331 (E.D.N.Y. 2003), aff'd, 395 F.3d 78 (2d Cir. 2005).  Moreover, a "'presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'"  Id. (quoting United States v. Armstrong, 517 U.S. 456, 464 (1996)).

Mazcuri has not met his burden to justify relief under the Hyde Amendment.  He argues that the Government acted in bad faith because of the manner in which he was arrested, noting that "federal agents came to [the hospital where he worked], and walked him out of the building in handcuffs."  (Def. Br. (Dkt. No. 121) at 4)  The Hyde Amendment, however, is concerned with prosecutorial misconduct – not misconduct by law enforcement officers more broadly.  See United States v. Mixon, 930 F.3d 1107, 1111-12 (9th Cir. 2019) ("A defendant is not entitled to attorneys' fees under the Hyde Amendment due to law enforcement misconduct; rather, the focus is on the prosecutors. . . .") (citing United States v. Monson, 636 F.3d 435, 439-40 (8th Cir. 2011)).  The conduct of the arresting officers – who were not case agents and who were not involved in Mazcuri's case except to effectuate his arrest (Govt. Opp. (Dkt. No. 125) at 10) – does not support a Hyde Amendment claim.  Id.  Moreover, there is no evidence that the arresting officers acted in bad faith.  Mazcuri's arrest took place "in a conference room at the [hospital where he worked] out of public view," and officers gave him "a jacket to cover the handcuffs so that they would not be visible to the public" when they escorted him out of the hospital.  (Jones Decl. (Dkt. No. 125-2) ¶ 2)  Although Mazcuri contends that he should have received "the opportunity to turn himself in or respond to the charges" before being arrested

(Def. Br. (Dkt. No. 4) at 4), arrests of criminal defendants without notice are routine, and Mazcuri cites no authority for the proposition that such arrests constitute prosecutorial misconduct or evidence of bad faith.

Mazcuri also contends that the Indictment was "faulty" because it "merely repeated the language of the statute" and "included a dearth of information about the individuals' alleged involvement" in the charged crimes.  (Id. at 4-5)  "[A]n indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime,'" however.  United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000)).  The indictment here is sufficient.  (Indictment (Dkt. No. 2))

To the extent that Mazcuri argues that the Indictment's allegations are unnecessarily inflammatory – because they refer to "human trafficking," "female dancers," and "prostitution" (Def. Br. (Dkt. No. 121)) – these allegations were plainly relevant to the charged crimes (forced labor conspiracy, visa fraud conspiracy, and fraud in foreign labor contracting conspiracy).  The inclusion of these terms in the Indictment was not improper.  See United States v. Block, No. 16-CR-595 (JPO), 2017 WL 1608905, at *5 (S.D.N.Y. Apr. 28, 2017) (noting that "[c]ourts in this Circuit are loath to tinker with indictments" and that "inflammatory" information may be stricken from an indictment "only where the challenged allegations are not relevant to the crime charged").

Mazcuri also contends that there was a "dearth of" inculpatory evidence.  (Def. Br. (Dkt. No. 121) at 9)  But Mazcuri has not reviewed witness statements on which the Government premised its case.  The Government submitted a nolle prosequi (Dkt. No. 115) before the time for producing such witness statements had come.  Moreover, although Mazcuri complains that the Government "resisted" certain discovery requests (Def. Br. (Dkt. No. 121) at 7-9), he does not dispute that the discovery materials produced by the Government were extensive.  (Govt. Opp. (Dkt. No. 125) at 17-21; Def. Reply (Dkt. No. 126))  He also does not suggest that the Government violated Fed. R. Crim. P. 16 or any other rule or statute.  In sum, whatever discovery-related delays took place do not demonstrate that the Government acted in bad faith and do not warrant relief under the Hyde Amendment.  See Bove, 888 F.3d at 611-12 (rejecting argument that the "the government 'sandbagged' [the defendant] by failing to disclose [a witness's] testimony until trial or until shortly before trial"; a "district court is required to . . . order disclosure of such evidence, commonly referred to as '3500 material' or 'Jencks Act material,' only at the close of a witness's direct examination at trial").

Finally, Mazcuri does not dispute that the Government promptly moved to dismiss the Indictment after doubts arose as to the credibility of key Government witnesses.  (Govt. Opp. (Dkt. No. 125) at 8, 21; Def. Reply (Dkt. No. 126))  To the extent that the Government could or should have probed these witnesses' credibility more thoroughly before charging Mazcuri, a prosecutor's "poor judgment," "myopia," or "[s]loppy work" alone "does not support a claim of vexatiousness, frivolousness, or bad faith, especially when the Government acted promptly to correct its error."  United States v. Lain, 640 F.3d 1134, 1139 (10th Cir. 2011) ("[T]he Government moved to dismiss the superseding indictment as soon as it realized its mistake. . . .

Sloppy work alone does not support a claim of vexatiousness, frivolousness, or bad faith, especially when the Government acted promptly to correct its error."); <u>United States v. Mitselmakher</u>, No. 07-CR-37 (BMC), 2008 WL 5068609, at *1 (E.D.N.Y. Nov. 20, 2008), <u>aff'd</u>, 347 F. App'x 649 (2d Cir. 2009) ("Notwithstanding the inadequacies of the investigation and prosecution, . . . [t]he Hyde Amendment does not sanction poor judgment or myopia.  It requires the prosecution of a defendant that is 'vexatious, frivolous, or in bad faith.'").

For these reasons, Mazcuri's application for an award of attorneys' fees and costs under the Hyde Amendment (Dkt. No. 121) is denied.

SO ORDERED.

Dated: August 17, 2020